# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMEE D. DOWNEY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| KILOLO KIJAKAZI, | )    **Case No. CIV-20-1040-SM** |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY | ) |
| ADMINISTRATION, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Amee D. Downey (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under Title XVI of the Social Security Act. Doc. 1.[1] *See* 42 U.S.C. § 405(g).[2] The

---

[1]    Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the administrative record (AR) will refer to its original pagination.

[2]    The Administrative Law Judge (ALJ) assigned to Plaintiff's case determined Plaintiff was not eligible for disability insurance benefits because her alleged disability onset date of May 17, 2018, fell after June 30, 2016, which was the date she was last insured for Title II benefits. AR 16. Plaintiff does not dispute this determination. Doc. 19, at 1. Thus, only her request for review of the denial of her supplemental security income benefits claim remains. But the "regulations that govern the two programs are . . . equivalent." *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019) ("Title XVI provides supplemental security income benefits 'to financially needy individuals who are aged, blind, or disabled regardless of their insured status.'"). And "§ 405(g) sets the terms of judicial review for each." *Id.*

parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). *See* Docs. 9, 18.

Plaintiff asks this Court to reverse the Commissioner's decision and to remand the case for further proceedings, arguing the ALJ erred in (1) her consideration of Dr. Patrick Herd's Mental Medical Source Statement (MMSS) when formulating Plaintiff's residential functional capacity[3] (RFC); and (2) her consideration of Plaintiff's consistency. Doc. 19, at 10, 23. After a careful review of the AR, the parties' briefs, and the relevant authority, the Court reverses the Commissioner's decision and remands the case for further consideration consistent with this order. *See* 42 U.S.C. § 405(g).

# I.    Administrative determination.

## A.    Disability standard.

The Social Security Act defines a disabled individual as a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). "This twelve-month

---

[3]    Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

## B.   Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

## C.   Relevant findings.

### 1.   Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 17-27; *see* 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

> (1)   had not engaged in substantial gainful activity since her alleged onset date of May 17, 2018;

(2)     had the following severe impairments: depressive disorder
        and anxiety disorder;

(3)     had no impairment or combination of impairments that met
        or medically equaled the severity of a listed impairment;

(4)     had the (RFC to perform a full range of work at all exertional
        levels but with the non-exertional limitations that her work
        must be limited to simple, routine, and repetitive tasks,
        occasional interaction with co-workers, supervisors, and
        public, and free of production rate pace;

(5)     was not able to perform her past relevant work;

(6)     was able to perform unskilled jobs that exist in the national
        economy, such as marker, copy machine operator, and
        laundry worker; and so,

(7)     had not been under a disability from May 17, 2018, through
        March 19, 2020.

*See* AR 17-27.

### 2.   Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's

request for review, *see id.* at 1-7, making the ALJ's decision "the

Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d

1324, 1327 (10th Cir. 2011).

## II.  Judicial review of the Commissioner's final decision.

### A.   Review standard.

The Court reviews the Commissioner's final decision to determine

"whether substantial evidence supports the factual findings and whether the

4

ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

**B.    Issues for judicial review.**

Plaintiff asserts the ALJ gave insufficient reasons for finding Dr. Herd's MMSS only "partially persuasive" and for ignoring his letter stating that Plaintiff's therapy dog was "therapeutic" for her condition. Doc. 19, at 10-22. Because of this alleged improper evaluation, Plaintiff argues the ALJ did not properly assess her RFC. *Id.* Plaintiff also argues the ALJ did not properly assess the consistency of her statements. *Id.* at 23-30. The Court agrees the ALJ's unexplained partial rejection of Dr. Herd's opinion requires remand.

### III.   The ALJ must properly articulate her evaluation of the medical opinions to facilitate review.

The ALJ's duty is to evaluate every medical opinion in the record and articulate how persuasive she finds the opinion. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); 20 C.F.R. § 416.920c(a). The ALJ determines an opinion's persuasiveness by evaluating its supportability and consistency and then "articulating" how she considered those factors. 20 C.F.R. § 416.920c(b)(2). An ALJ may also, but need not, discuss other considerations that may bear on the persuasiveness of a medical opinion, such as the relationship of the source to the claimant, the source's area of specialization, and other factors such as the source's familiarity with the disability program's policies and evidentiary requirements. *Id.*; *id.* § 416.920c(c)(3-5). The ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

### A.   The ALJ failed to explain what inconsistencies in the record supported her partially discounting Dr. Herd's opinions.

In his October 9, 2019 MMSS, Dr. Herd stated that he had been actively treating Plaintiff for her mental health issues since July 2017. AR 675. He had examined her every one-to-three-months during that time and had diagnosed her with recurrent major depression, anxiety disorder, and borderline intellectual function. *Id.* He stated Plaintiff had shown a "limited response" to

medication but had slightly improved since her hysterectomy. *Id.* His prognosis for Plaintiff was "guarded." *Id.* In his opinion, Plaintiff "look[ed] anxious and ready to run away" during his examination. *Id.* He explained she was "avoidant" and needed her dog or boyfriend to go outside her home. *Id.*

Dr. Herd identified some of Plaintiff's "signs and symptoms" as depressed mood, panic attacks, delusions or hallucinations, frequent distractibility, difficulty sustaining attention, difficulty organizing tasks, detachment from social relationships, distrust and suspiciousness of others, and significant difficulties learning and using academic skills. *Id.* at 676. He opined that because she had "poor concentration" and was "easily overwhelmed" she would be "unable to meet competitive standards" for unskilled work in the areas of maintaining attention for a two-hour span, working in coordination with or proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and dealing with normal work stress. *Id.* at 677. She was also seriously limited in her ability to "remember work-like procedures,"

"understand and remember very short and simple instructions," "carry out very short and simple instructions," "sustain an ordinary routine without special supervision," "make simple work-related decisions," "ask simple questions and request assistance," and "respond appropriately to changes in a routine work setting." *Id.* And because in his opinion she would "need supervision and accommodations," she would be unable to meet competitive standards in understanding, remembering, and carrying out detailed instructions, setting realistic goals or making plans independently of others, and dealing with the stress of either skilled or semi-skilled work. *Id.* at 678. She would also be "seriously limited" in her ability to travel in unfamiliar places or use public transportation because she "needs [her] husband to navigate [the] world." *Id.*

Dr. Herd also opined that Plaintiff's psychiatric-related stress exacerbated her "chronic pain headaches" and work-related stress would hinder her ability to, among other things, work within a schedule, make decisions, complete tasks, and work with other people—including her supervisors and the public. *Id.* Dr. Herd opined that Plaintiff's impairments, which had lasted or were expected to last at least twelve months, would cause her to miss work more than four days per month. *Id.* at 679. Finally, Dr. Herd opined that Plaintiff could not manage benefits in her own best interest. *Id.*

8

The ALJ recited all the above findings and more but found Dr. Herd's opinion was only "partially persuasive" because it was "not supported by other objective evidence in the record." AR 23-25. The ALJ did not then explain what portions of the record she found either supported or did not support Dr. Herd's opinion in the MMSS. *See* 20 C.F.R. § 416.920c(b)(2) (stating the ALJ "will explain how [she] considered the supportability and consistency factors for a medical source's medical opinions"). The ALJ also completely failed to explain how consistent she found Dr. Herd's opinion by comparing it "with the evidence from other medical sources and nonmedical sources in the claim," as she was required to do. *Id.* § 416.920c(c)(2). This was error. *See, e.g., Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) ("We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.").

## B. The Court cannot adequately review the basis for the ALJ's RFC determination.

Defendant asserts this Court should not "reweigh the evidence" because "the ALJ considered the record as a whole and properly found that the limitations Dr. Herd assessed were unsupported." Doc. 20, at 5, 6. Defendant questions the ALJ's check-box conclusions and reliance on "medical findings" that Plaintiff "needs husband to navigate the world." *Id.* at 5. Thus, Defendant argues, neither the vocational expert (VE), through a hypothetical question,

nor the ALJ needed to consider those limitations when crafting the RFC. *Id.* at 6. But the Court cannot consider these post-hoc rationalizations to justify the ALJ's failure to articulate her reasons for partially rejecting Dr. Herd's opinion. *See, e.g.*, *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[C]ourt may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

Defendant also contends that "[p]rior to discussing Dr. Herd's opinion, the ALJ also discussed the medical evidence she considered while assessing Plaintiff's RFC . . . ." Doc. 20, at 6. The record reflects the ALJ's recitation of certain medical evidence in her decision. AR 20-23.[4] It also reflects the ALJ's reliance on Dr. Bruce Lochner's opinion as to Plaintiff's mental RFC on November 16, 2018. *Id.* at 25.[5] The Court's concern is that Dr. Lochner's

---

[4]   Of the many records from the Jim Taliaferro Clinic where Plaintiff had been a patient since 2017, the ALJ cited to only three medical records in addition to Dr. Herd's MMSS. AR 22. The ALJ referenced only one medical record by Dr. Herd in which he stated Plaintiff reported she "was doing fine" and "[was] medication compliant." *Id.*

[5]   Dr. Lochner opined Plaintiff was markedly limited in her ability to understand, remember, and carry out detailed instructions and her ability to interact appropriately with the general public. AR 132. He found Plaintiff was moderately limited in her ability to carry out very short and simple instructions, her ability to complete a normal workday without interruptions from her psychologically based symptoms and to perform at a consistent pace, and her ability get along with her coworkers and peers. *Id.* at 132-33. He concluded that, for the prior twelve months, Plaintiff's mental impairments had not precluded her from "[p]erforming mental operations necessary for 1-3

opinion, which the ALJ relied on to craft Plaintiff's mental RFC, only considered records up to Dr. Eddie Scott's November 14, 2018 findings after his consultative examination of Plaintiff. *Id.* at 129-133, 503-510.[6]

Dr. Lochner's assessment predated Dr. Herd's October 2019 MMSS. And although the ALJ considered the "entire record," *id.* at 20, her decision relies on no medical evidence dated after November 2018. from Dr. Herd. The objective evidence after November 2018 shows the occurrence of another stress-related seizure, her daily marijuana use, and the continuation of her "persistent mood disorder" and anxiety with little to no improvement. *Id.* at

---

step tasks that require minimal social interaction," "[m]aintaining adequate [concentration, persistence and pace] sufficient for employment," "[m]aintaining adequate interpersonal relationships to interact and relate well enough to accept directions and feedback from supervisors and peers that are typical of work life, but not for relating in the public sphere," and "[a]dapting to the mental demands of a work situation subject to the restrictions" stated. *Id.* at 133.

[6]    Dr. Scott reported that Plaintiff scored an eighteen out of a possible thirty points on the Montreal Cognitive Assessment and that this score "suggest[ed] the possibility of cognitive impairment." AR 508. During the examination, Plaintiff had difficulty with "concentration, processing information, and the development of new memories." *Id.* Dr. Scott diagnosed Plaintiff with anxiety disorder, with agoraphobia and panic, posttraumatic stress disorder, and moderate to severe depressive disorder. *Id.* Dr. Scott did not expect Plaintiff's condition to change or improve significantly over the next twelve months. *Id.* Dr. Scott noted Plaintiff exhibited no signs of "exaggeration or malingering." *Id.* at 509. He rated as fair her "ability to understand, remember and carry out simple and complex instructions in a work related environment." *Id.*

680-82, 684, 687, 708-09, 712-13, 720-21, 723-227, 730. Dr. Herd's numerous examinations of Plaintiff led him to conclude she would be absent from work more than four days per month, would be seriously limited in her ability to travel to unfamiliar places or use public transportation and would need either her service dog or her husband with her when she left her home. *Id.* at 675, 679.[7] Yet, the ALJ did not account for or discount these limitations when assessing her RFC.

While "an ALJ is not required to discuss every piece of evidence," she must "discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996); *see also* 20 C.F.R. § 416.920(a)(3) ("We will consider all evidence in your case record . . ."). Because the ALJ failed to properly evaluate Dr. Herd's opinion along with the other medical evidence, this Court is unable to adequately review her decision. *Cf. Guice v. Comm'r*, 785 F. App'x 565, 575 (10th Cir. 2019) ("Without this explanation, we cannot meaningfully review the ALJ's weighing of these medical opinions to determine

---

[7]     When the ALJ included the four days absent per month limitation in her hypothetical question to the VE at Plaintiff's hearing, the VE testified it would "eliminate past work as well as competitive employment." AR 61. And when Plaintiff's counsel asked about Plaintiff's use of a service dog, the VE testified it would be considered an "accommodation" which would "eliminate competitive employment." *Id.* at 61-62.

if her reasons for rejecting the opinions of [claimant's] treating psychiatrists and adopting the state-agency psychologists' opinions are supported by substantial evidence and whether she applied the correct legal standards in arriving at these conclusions."); *see also Cira v. Colvin*, 67 F. Supp. 3d 1206, 1209-10 (D. Colo. 2014) (holding that the Court "is neither required—nor, indeed, empowered—to parse through the record to find specific support for the ALJ's decision. Such generalized, global references to the record make the ALJ's opinion nearly impossible to review, and certainly do not constitute substantial evidence in support of the Commissioner's disability determination").

The Court declines to address Plaintiff's remaining objections to the ALJ's decision because they may be affected by the ALJ's treatment of the case on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand"). On remand, the ALJ shall consider Dr. Herd's opinion along with all the medical evidence.

## IV.   Conclusion.

Based on the above, the Court reverses the Commissioner's decision and remands for further proceedings.

E**NTERED** this 4th day of October, 2021.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE